UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KHARI DEVON COLEY,

                      Plaintiff,

    -against-                                           9:19-CV-00382 (LEK/ATB)

W. GARLAND, *et al.*,

                      Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Khari Coley commenced this action pro se on April 1, 2019, alleging violations of his Eighth Amendment rights arising out of his confinement at Upstate Correctional Facility. Dkt. No. 1 ("Complaint").[1] On May 8, 2019, the Court issued a Decision and Order granting Plaintiff's IFP application and directing Plaintiff to file an amended complaint to "properly name [the unidentified] individuals as parties" to the action. Dkt. No. 7 ("May Order") at 6. In response to the May Order, Plaintiff filed an amended complaint, Dkt. No. 28 ("First Amended Complaint"), but failed to include his signature. Plaintiff later signed the Amended Complaint, Dkt. No. 31, and shortly thereafter, filed another Amended Complaint, Dkt. No. 34 ("Second Amended Complaint" or "Amended Complaint"), alleging violations of his Eighth Amendment rights including: (1) deliberate indifference to serious medical needs; (2) excessive force; and (3) failure to intervene, against defendants W. Garland, Nathan T. Locke, William Hoffnagle, Joseph R. Ranger, and Randy Russell (collectively, "Defendants").[2]

---

[1] Plaintiff is now represented by counsel. Dkt. Nos. 77, 81.

[2] Plaintiff also filed a motion to appoint counsel, Dkt. No. 30, which the Court denied. Dkt. No. 38.

On January 21, 2020, Defendants filed a motion to dismiss Plaintiff's medical indifference claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 57. In a Decision and Order dated September 16, 2020, the Court granted Defendants' motion to dismiss.[3] Dkt. No. 80 ("September Order").

Now before the Court is Defendants' motion for summary judgment, Dkt. No. 93 ("Motion") regarding Plaintiff's two remaining Eighth Amendment claims alleging excessive force and failure to intervene. Defendants have also submitted a statement of material facts. Dkt. No. 93-9 ("Defendants' Statement of Material Facts"). Plaintiff has filed a response to Defendants' statement of material facts, Dkt. No. 100 ("Plaintiff's Response to Defendants' Statement of Material Facts") and a memorandum of law, Dkt. No. 100-1 ("Plaintiff's Memorandum"). Defendants filed a reply. Dkt. No. 101 ("Defendants' Reply"). For the reasons that follow, Defendants' Motion is granted.

## II.    BACKGROUND

### A. Factual Background

The following facts are taken from Defendants' statement of material facts, Dkt. No. 93-2, and are undisputed unless otherwise noted. Facts unrelated to the current motion are detailed in the Court's September Order. Dkt. No. 80 at 3–5.

At all times relevant to this action, Plaintiff was confined at Upstate Correctional Facility ("Upstate C.F."). Defs.' SMF ¶ 2. At approximately 6:00 PM on October 31, 2016, Correction Officer ("C.O.") Russell was completing security rounds and passed by Plaintiff's cell. Id. ¶ 3. As Russell passed by Plaintiff's cell, he observed that a bed sheet was tied around Plaintiff's

---

[3] In its Decision and Order, the Court also denied Plaintiff's motion to amend, Dkt. No. 68, and denied Plaintiff's letter motion for injunctive relief, Dkt. No. 70.

neck and that the sheet was secured to the inside of the cell door. Id. ¶ 4. Plaintiff, however, maintains that he never tied anything around his neck during this incident. Pl.'s Resp. to Defs.' SMF ¶ 4.

According to Defendants, Russell then ordered Plaintiff to untie "the noose," but Plaintiff did not comply. Defs.' SMF ¶ 5. In response, Russell immediately called for assistance. Id. ¶ 6. Plaintiff contests these facts and denies that this conversation occurred because he asserts that he did not have anything around his neck. Pl.'s Resp. to Defs.' SMF ¶ 5.

Sergeant William Hoffnagle and other security staff responded to Russell's call for assistance. Id. ¶7. Hoffnagle ordered staff to enter the cell and free Plaintiff of the bed sheet around his neck. Id. ¶ 8. According to Defendants, after Garland and Locke entered Plaintiff's cell, they assisted Plaintiff to his feet and Garland removed the sheet from Plaintiff's neck. Id. ¶¶ 9–10. Plaintiff, however, disputes that anything was around his neck during this incident. See generally Pl.'s Resp. to Defs.' SMF.

Prison staff applied mechanical restraints to Plaintiff, id. ¶ 11, and Russell retrieved a gurney that the prison staff placed Plaintiff on to transport him to the infirmary. Id. ¶¶ 12–13. Plaintiff was examined in the infirmary and later transported by ambulance to an outside hospital. Id. ¶ 15. Plaintiff did not lose consciousness "during the incident." Id. ¶ 16.

Defendants state that Plaintiff told a mental health professional at Upstate C.F. that his purpose in his attempt to "hang up" was to "avoid a double cell." Id. ¶ 17. According to Defendants, when the prison staff opened the cell to stop Plaintiff from "hang[ing] up," the cell gate pulled the makeshift-noose on Plaintiff's neck and strangulated Plaintiff for a moment. Id. ¶ 18. Plaintiff again disputes that he placed anything around his neck and also denies stating that he admitted that he tried to hang himself. Pl.'s Resp. to Defs.' SMF ¶¶ 17–18.

Rachel Seguin is the Assistant Director of the Inmate Grievance Program ("IGP") of the New York State Department of Corrections and Community Supervision ("DOCCS"). Id. ¶ 20. In her capacity as Assistant Director of IGP, Seguin is the custodian of the records maintained by the Central Office Review Committee ("CORC"), the body that renders final administrative decisions under DOCCS's three-step grievance program. Id. ¶ 21. Seguin searched CORC records and determined that Plaintiff did not file a grievance appeal with CORC related to any issue connected to Plaintiff's claims in this action. Id. ¶ 22.[4]

Similarly, Sherri Debyah is an Inmate Grievance Program Supervisor at Upstate C.F. and is responsible for keeping records of grievances filed by inmates at that facility. Id. ¶ 23. At all times relevant to this action, Upstate C.F. had a fully functioning inmate grievance process available. Id. ¶ 24.[5] Based upon her search of the Inmate Grievance Program files, Debyah concluded that the Upstate C.F. Inmate Grievance Program did not contain records of any grievance filed by Plaintiff relating to the issues in the present action. Id. ¶ 25. Additionally, Plaintiff was familiar with the different steps of the inmate grievance process, id. ¶ 26, and had filed grievances at Upstate C.F. about other incidents. Id. ¶ 27.

## III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

---

[4] Plaintiff disputes that these searches occurred but fails to provide any evidence to the contrary. See Pl.'s Resp. to Defs.' SMF ¶¶ 21–22.

[5] Plaintiff disputes that Upstate C.F.'s grievance process functioned properly but fails to specifically point to any issues associated with Upstate C.F.'s grievance process beyond a general citation to Plaintiff's deposition. See Pl.'s Resp. to Defs.' SMF ¶ 24.

outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes

of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

Defendants argue there are no genuine disputes of material fact regarding Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff's assertions are contradicted by the record and thus raise no constitutional violations; and alternatively (3) Defendants are entitled to qualified immunity. Mot. at 5–15.

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Killian, 680 F.3d at 238 (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." Ross v. Blake, 578 U.S. 632, 642 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable

6

for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

In New York State:

> DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).
>
> Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).
>
> Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. §

7

> 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

In the case of "harassment grievances," which are "grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate," New York State regulations establish an expedited procedure by which the grievance clerk forwards the grievance directly to the facility superintendent for action. 7 N.Y.C.R.R. §§ 701.2(e), 701.8(d). The inmate, however, must still initially file the grievance with the prison's grievance clerk in accordance with ordinary procedure. Id. §§ 701.8(a)–(c). The grievance supervisor will then determine whether the grievance raises a bona fide issue of harassment meriting an expedited process. Id. § 701.5(a)(2). Once a grievance is designated a "harassment grievance," the superintendent must respond within a set time frame, and the inmate may appeal directly to the next step if he receives no response within that time frame. Id. §§ 701.8(f)–(g).

Moreover, the Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. Messa v. Goord, 652 F.3d 305, 308–09 (2d Cir. 2011) ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, the Court concludes that Defendants have satisfied their burden of proof. Defendants provide testimony from Seguin and accompanying records demonstrating that

Plaintiff did not file the required grievance appeal with CORC. Dkt. No. 93-3. Additionally, Defendants also submit testimony from Debyah, the inmate supervisor at Upstate C.F., stating that the prison has no record of grievances filed by Plaintiff related to his claims in this action. Dkt. No. 93-4. She also supported this testimony by providing a copy of Plaintiff's grievance list from Upstate C.F. Id. at 4.

Furthermore, the Court is unpersuaded that administrative remedies were unavailable to Plaintiff under Ross's first two exceptions. Indeed, Plaintiff testified that he had successfully filed and appealed grievances in the past at Upstate C.F., Dkt. No. 93-2 ("Plaintiff's Deposition") at 102–04, which suggests that the DOCCS grievance process was not a "dead end" or "incapable of use." Lurch v. Bui, No. 19-CV-895, 2020 WL 8450543, at *5 (N.D.N.Y. Dec. 8, 2020), report and recommendation adopted Lurch v. Jones, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021) ("[T]he Court notes that the record establishes that Plaintiff has filed other grievances and appealed at least one prior grievance denial to CORC. This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such the first two exceptions identified under Ross are not applicable here") (internal citations and quotations omitted); Gonzalez v. Coburn, No. 16-CV-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end or so opaque that Plaintiff could not avail himself of it.").

Similarly, the PLRA's third textual exception is also inapplicable here. Plaintiff argues that his grievances against Defendants never received a response, which is evidence that Defendants "destroyed his grievances and disallowed him from filing grievances." Pl.'s Mem. at

11. Because of this absence of response and presence of alleged interference, Plaintiff argues he should be excused from the PLRA's exhaustion requirement. However, Plaintiff does not provide evidence of Garland or any other Defendant meddling with his grievances that suggests the presence of interference. Id. at 10–13.

The Second Circuit's decision in Cicio v. Wenderlich is instructive. 714 Fed. App'x 96 (2d Cir. 2018). There, the plaintiff argued that the PLRA's exhaustion requirement should be waived because he never received a response to the grievance he purportedly filed. Id. at 97. The Second Circuit noted, "When a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal. Because [the plaintiff] did not exercise his right of appeal, he did not exhaust his available administrative remedies. Accordingly, the PLRA bars the instant action." Id. at 97–98. The Second Circuit further reasoned, "We also reject Cicio's argument that the non-response to his grievance constituted manipulation, so as to excuse the exhaustion requirement." Id. at 98. Here, like Cicio, it is undisputed that Plaintiff did not file an appeal after his grievances allegedly went unheard by prison staff. And because Plaintiff did not "exercise his right of appeal, he did not exhaust his available administrative remedies," and accordingly, the Court "rejects [Plaintiff's] argument that the non-response to his grievance constituted manipulation, so as to excuse the exhaustion requirement." Cicio, 714 Fed. App'x at 97–98. As a result, because Plaintiff did not comply with DOCCS's grievance process and because he failed to provide evidence that Defendants interfered with his grievances, he has not demonstrated that the Court should waive the exhaustion requirement pursuant to the PLRA's third textual exception.

As a final matter, Plaintiff argues that the exhaustion requirement should be waived because he mailed letters and appealed to other officials outside DOCCS's formal grievance

10

process. Pl.'s Mem. at 12. However, "the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." Timmons v. Schriro, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015); Simons v. Campos, No. 09-CV-6231, 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010) ("Assuming the truth of the Complaint, the plaintiff's oral statements to various officials and his letter to the superintendent fail to satisfy the . . . exhaustion requirement."). Consequently, Plaintiff's informal letters outside DOCCS's grievance process are insufficient under the PLRA's exhaustion regime.

As a result, the Court grants Defendants' motion for summary judgment because Plaintiff has failed to exhaust his administrative remedies under the PLRA. Because the Court grants summary judgment on the basis of failure to exhaust, the Court declines to address Defendants' alternative arguments.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 93) is **GRANTED** because of Plaintiff's failure to exhaust administrative remedies; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: January 20, 2023
       Albany, New York

_/s/ Lawrence E. Kahn_
LAWRENCE E. KAHN
United States District Judge